## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**TERRY J. SAULSBERRY**
3562 Finesse Drive
Decatur, GA  30032

     *Plaintiff*

v.

**MERRICK GARLAND,**
**ATTORNEY GENERAL, 1**
**U.S. Department of Justice 950**
**Pennsylvania Avenue**
Washington, DC 20530

**Case No. 1:23-cv-03483**

Serve: Jolene Ann Lauria, Acting Assistant Attorney General for Administration and Deputy Assistant Attorney General/Controller for the Department of Justice
U.S. Department of Justice
Justice Management Division
950 Pennsylvania Avenue NW Room 1111
     Washington, DC 20530

     *Defendant*

## COMPLAINT AND JURY DEMAND

COMES NOW PLAINTIFF, Terry J. Saulsberry, by and through undersigned counsel,

and  files this Complaint, and sues the Defendant, and as cause states:

## PARTIES

1. Plaintiff Terry J. Saulsberry resides at 3562 Finesse Drive, Decatur, GA  30032.

2.   Defendant Merrick Garland, Attorney General of the United States, of the U.S.

Department of Justice, maintains a principal address at 950 Pennsylvania Avenue,

Washington, DC 20530.

## JURISDICTION AND VENUE

3.   Jurisdiction in this case is based upon 28 U.S.C. §§1331. Venue in this case is

based upon 28 U.S.C. §1343(a)(3), 28 U.S.C. §1343(a)(4) and 28 U.S.C. § 1391, as this

action involves a Defendant that is an officer or employee of the United States acting in his

official capacity or under color of legal authority, or the United States that is located in this

district.  In addition, a substantial part of the events or omissions giving rise to the claim

occurred at a branch of Defendant, the Federal Bureau of Prisons, within this district.

4.   Plaintiff has timely complied with any conditions precedent and jurisdictional

prerequisites to filing suit.

5.   Plaintiff exhausted any and all administrative remedies, including filing an

informal complaint of discrimination with the Defendant Department of Justice (Federal

Bureau of Prisons), and entering into a settlement agreement, on April 2, 2021, which

Defendant admits to having breached.  Subsequent to the breach, Plaintiff filed, on April 11,

2022, a Breach of Settlement Agreement Complaint.  Defendant admitted to the breach of the

settlement agreement in a Final Agency Decision ("FAD"), dated May 11, 2022.  Defendant

issued to Plaintiff a Right to File letter on May 18, 2022.  Plaintiff filed a new Complaint,

with additional claims, on May 18, 2022, and Defendant issued a FAD on October 24, 2022.

In said FAD, Defendant declined to investigate the issues that Plaintiff raised in his original

Complaint, prior to the breach of the settlement agreement.  In said letter, dated October 24, 2022, Defendant advised Plaintiff that he could request a FAD.

6.     Plaintiff Saulsberry requested a FAD from Defendant in emails dated May 16, 2023 and July 12, 2023.  Plaintiff Saulsberry also telephoned Defendant's Complaint Adjudication Office ("CAO") about the FAD several times.  Defendant's CAO reported to Plaintiff Saulsberry that it is backlogged, with approximately 500 cases awaiting a FAD, as a consequence of a shortage of attorneys.  Defendant's CAO advised Plaintiff Saulsberry that a FAD could take several years.

7.     Hence, Defendant did not timely issue a Final Agency Decision within 40 days, nor to date.

## FACTS

8.     Plaintiff Saulsberry is currently employed at the Federal Bureau of Prisons ("BOP" or the "Agency"), which is a United States federal law enforcement agency within the U.S. Department of Justice.  The BOP operates U.S. federal prisons and is responsible for the care, custody, and control of federal prisoners.  From June 2012 until April 24, 2021, Plaintiff Saulsberry had served as a Chaplaincy Administrative Program Manager and manager of the 3409 Chaplaincy Services Cost Center with a grade of GS-14.  Plaintiff Saulsberry has served in the BOP since 2001.  Under the terms of the settlement agreement, Plaintiff Saulsberry served as Chaplain (religious services examiner/evaluation specialist)—excepted service.  On April 25, 2021, Plaintiff Saulsberry was reassigned to the position of Food Services Examiner, competitive service.

9.     As the Chaplaincy Administrative Program Manager and 3409Cost Center Manager, Plaintiff Saulsberry had provided oversight of the Chaplaincy Services Branch

contracts, with the exception of the Life Connections Program.  Plaintiff Saulsberry developed a lesson plan and PowerPoint presentation used to train the more than 220 Chaplains on contracting at the Management and Specialty Training Center in Aurora, CO.   In 2010, Plaintiff Saulsberry became certified as a Contracting Officer Technical Representative ("COTR")/Contract Monitor ("CM"), and he maintained a working and functional knowledge of the contracting and procurement process.  He concomitantly served as a subject matter expert on contracting for the Chaplaincy Services Branch.

10.     Prior to having transferred to the Chaplaincy Administrative Program Manager position, Plaintiff Saulsberry had developed a reputation for advancing the Chaplaincy through various programs, developing resource guides and materials, and working closely with the executive staff at four different field institutions, including a complex institution.  Chaplains across the country were familiar with Plaintiff Saulsberry's work as a result of his guides and presentations at the Management and Specialty Training Center in Aurora, CO.  The resource materials developed by Plaintiff Saulsberry were used by 90% of Defendant's institutions.

11.     Upon assuming the position of Chaplaincy Administrative Program Manager, Plaintiff Saulsberry aggressively restructured the Chaplaincy training program and the Chaplaincy hiring process with Defendant's HR, as well as the endorsement program.  Plaintiff Saulsberry concomitantly served as SME for 50 State Religious Directors.  Plaintiff Saulsberry had also earned a doctorate degree, with a reentry focus, in 2006.

12.     Plaintiff Saulsberry is African American, black, and male.  Plaintiff Saulsberry engaged in prior protected EEO activity. Plaintiff Saulsberry engaged in prior protected EEO activity when he filed the complaint of discrimination in his first EEO Complaint in 2006, at which time he also filed a grievance.  Plaintiff Saulsberry named Lisa Hollingsworth and Delores

Stephens as discriminating officials.  Plaintiff Saulsberry subsequently filed a second EEO complaint in January 2016, based upon a non-selection, alleged discrimination, and an alleged hostile work environment.  Plaintiff Saulsberry named Linda McGrew, Kathryn Tracy, Marion Feather, Patti Butterfield, and Heidi Kugler as discriminating officials.

13.    The non-selection that was at issue in Plaintiff Saulsberry's 2016 EEO Complaint was for non-selection for the position of Chaplaincy Administrator in 2015.  Plaintiff Saulsberry also filed grievances, based upon underrating, and a lowering of his final performance appraisal, in 2017, 2018, 2020, and 2021.  Plaintiff Saulsberry additionally grieved having been provided with a Performance Work Plan ("PWP") 184 days late.  Saulsberry named Kugler as the discriminating official.   In all four instances in which Plaintiff Saulsberry had filed grievances, Plaintiff Saulsberry had received an initial rating of "Excellent."  In all four instances as well, the ratings were overturned by the Performance Rating Grievance Committee ("PRGC"), and Plaintiff Saulsberry received respective ratings of "Outstanding."  In 2017, Plaintiff Saulsberry also filed a grievance based on having been denied three days of telework and only being given one day of telework.  Plaintiff Saulsberry named Kugler and Butterfield as the discriminating officials.

14.    On April 30, 2018, Plaintiff Saulsberry, in addition to seeking to resolve his performance appraisal grievance, informally requested a temporary reassignment away from Kugler.

15.    On January 5, 2021 and February 18, 2021, Kugler removed Plaintiff Saulsberry from the 3409 Chaplaincy Services Cost Center position.  Kugler concomitantly mentioned that Johanna Ramos, Administrative Officer, would assume the duties of the 3409 Cost Center

Manager.  Ramos represented to Plaintiff Saulsberry that Kugler wanted her to contact Felicia Savage of Defendant's Business Office in order to remove, from Plaintiff Saulsberry, access to the 3409 Cost Center.  Kugler's reason for removing Plaintiff Saulsberry from any contact with the 3409 Cost Center was that Plaintiff Saulsberry had submitted a protracted whistleblower disclosure of Defendant's management's misuse of government funds in 2019, and Kugler was therefore under investigation in 2020.   Ramos informed Plaintiff Saulsberry that she had no experience in managing a cost center before having been abruptly reassigned in order to assume this responsibility.

16.    Prior to Ramos, no administrative officer had served as the Cost Center Manager, and no administrative officer possessed the training or expertise to serve as the Cost Center Manager.

17.    Plaintiff Saulsberry's co-workers were treated more favorably.  Kyu Lee, FaithBased Coordinator, was responsible for managing two Cost Centers in the Chaplaincy Services Branch for seven years.  Plaintiff Saulsberry was the only Cost Center Manager who was removed from his position after seven years.

18.    On August 31, 2020, Plaintiff Saulsberry requested a reasonable accommodation and a request to move his supervisory authority to a Senior Deputy Assistant Director other than Alix McLearen, who, in addition to being a Senior Deputy Assistant Director, Reentry Services Division, was a close friend of Kugler, and who fully supported Kugler in all of her discriminatory and retaliatory actions against Plaintiff Saulsberry.

19.    Plaintiff Saulsberry subsequently filed an EEO case in October 2021, in which he alleged discrimination based on religion (Practice of Religion through Profession), with respect to his non-selection for the position of Chaplain excepted service to the Associate Warden-No

Pathway for Non-Veteran Status Excepted Service, Director's Office, Central Office.  This was a class filing of eight Chaplains, in which Plaintiff served as Class Agent, until January 2022, when Plaintiff Saulsberry withdrew.  Plaintiff Saulsberry named Michael Carvajal and Gene Beasley as the discriminating officials.

20.    Plaintiff Saulsberry also filed an EEO case, based upon discrimination and retaliation, when he was not selected for the position of Chaplain (Faith-Based Coordinator) in the Chaplaincy Services Branch, Reentry Services Division.  Plaintiff Saulsberry named Sonya Thompson, McLearen, and Kugler as the discriminating officials.

21.    In March 2022, Plaintiff Saulsberry filed an EEO case, grounded in discrimination based on Religion (Practice of Religion through Profession), and upon his nonselection for the position of Chaplain excepted service to the Associate Warden-No Pathway for Non-Veteran Status Excepted Service, Director's Office, Central Office.  Plaintiff Saulsberry named Carvajal and Beasley as the discriminating officials.

22.    Plaintiff Saulsberry's first line supervisor has been Heidi Kugler, Chaplaincy Administrator.  His second-line supervisor was Alix McLearen.  Both McLearen and Kugler are white females.

23.    Kugler was aware that Plaintiff Saulsberry had filed his 2016 EEO Complaint based in part on Kugler's selection over Plaintiff Saulsberry as Chaplaincy Administrator.  McLearen was also aware of Plaintiff Saulsberry's EEO Complaints.  In Plaintiff Saulsberry's 2017, 2018, 2020, and 2021 grievances, Plaintiff Saulsberry had named Kugler as the discriminating official.  Kugler and McLearen were aware of having been named as discriminating officials in Plaintiff Saulsberry's October 2021 and January 2022 EEO Complaints.

24.    In his role as Chaplaincy Administrative Program Manager, Plaintiff Saulsberry's duties and responsibilities included personnel matters with the Consolidated Staffing Unit and Personnel Director's Office, recruitment and hiring, maintaining and endorsing agency records, facilitating communications, distributing vacancy announcements, coordinating production of bulletins, reviewing policy, drafting crediting plans, serving as Cost Center Manager, attending annual training, and tracking both the hiring and the retention of the chaplaincy workforce, among other things.

25.    Kugler engaged in a campaign of discrimination and reprisal against Plaintiff Saulsberry.

26.    In 2016, Kugler assigned Plaintiff Saulsberry a final performance rating of "Excellent" when he had earned an "Outstanding," which had been the rating that he had received prior to the time that Kugler supervised him.

27.    Plaintiff Saulsberry grieved the rating, and wrote a Final Performance Appraisal Rating Grievance Memorandum.  Kugler then obstructed Plaintiff Saulsberry's right to redress, by withholding Plaintiff Saulsberry's Final Performance Appraisal Rating Grievance Memorandum.   Among other deficiencies in the rating, Kugler did not rate Plaintiff Saulsberry on accounting and monthly reconciliation of all Cost Center activity.  Instead, Kugler rated Plaintiff Saulsberry on time and attendance records.  Plaintiff Saulsberry had asked Kugler to provide a review that referred to his performance metrics and to rate him appropriately, and Kugler ignored Plaintiff Saulsberry's request.  Plaintiff Saulsberry reported this to Sue Cimino, HR Manager, and Butterfield, each of whom is a Caucasian female.  Both refused to address Plaintiff Saulsberry's concerns and hold Heidi Kugler accountable for obstructing Plaintiff Saulsberry's rights.

8

28.    In the following year, 2017, Kugler deliberately lied about Plaintiff Saulsberry's work performance standards and intentionally underrated Plaintiff Saulsberry's Final Performance Appraisal.  In so acting, Kugler falsely represented that Marion Feather, Assistant Director, Reentry Services Division, had changed Plaintiff Saulsberry's performance standards without notice.  According to Kugler, the Assistant Director required that Plaintiff Saulsberry perform "above and beyond" above an "above and beyond" standard on every performance measure in order to earn an "Outstanding" rating.

29.    Plaintiff Saulsberry filed a grievance with the PRGC, and the rating was overturned.  Plaintiff Saulsberry received a rating of "Outstanding."

30.    During a meeting on March 23, 2017, Kugler banned Plaintiff Saulsberry from leaving his office without personally reporting to her office and directly informing her of (a) where Plaintiff Saulsberry was going for a meeting; (b) the staff with whom Plaintiff Saulsberry would be meeting; and (3) the contents of what would be discussed with the staff.  In making this demand of Plaintiff Saulsberry, Kugler spoke in a condescending manner and declared:  "I want to make sure you understand me! I want to make sure I am clear!  You must come to my office before you leave your office to meet and talk with anyone in Central Office!"  Kugler made no such demand of any Caucasian employee.

31.    On April 19, 2018, Kugler continued her mistreatment of Plaintiff Saulsberry by berating him in a loud tone that echoed down the hallway.  Kugler could be overheard by all of the staff in the Chaplaincy Services Branch and the Residential Reentry Branch of Defendant's Reentry Services Division.

32.    In 2018, Kugler again assigned Plaintiff Saulsberry a rating of "Excellent," and falsely represented that the Agency had placed a 10% cap on ratings of "Outstanding" that would

be issued.  Richard Lane, Human Resources Manager, refuted Kugler's assertion that the Agency was placing a 10% cap on ratings of "Outstanding."  Kugler did not profess that there was such a cap in speaking to any Caucasian employees.

33.    Plaintiff Saulsberry again filed a grievance with the PRGC, and the rating was overturned.  Plaintiff Saulsberry received a rating of "Outstanding."  Kugler then, in 2020, underrated Plaintiff Saulsberry by assigning him a rating of "Excellent," and said rating was again overturned by the PRGC.

34.    In 2020, Kugler was under investigation for having misused government funds in 2019 for having appropriated $10,000 to a former colleague for unauthorized services.  Kugler's action was illegal, because appropriations over $2,500 required a contract from the National Contracts Procurement & Property Management Branch (the "Procurement Branch"), with the prior approval of the Director of the Bureau of Prisons for a payment to anyone engaged as a consultant.  Kugler's alleged misconduct was reported by both Plaintiff Saulsberry and another Chaplain, Anders Pederson, to the Reentry Services Division Leadership.  Kugler had directed employee Kyu Lee to use his government purchase card to pay the $10,000.  Plaintiff Saulsberry also reported Kugler's alleged misconduct to the Office of Special Counsel ("OSC") in his capacity as the Cost Center Manager for the Chaplaincy Services Branch for seven years.

35.    Kugler then, in retaliation for Plaintiff Saulsberry's having participated in protected whistleblowing activity, removed Plaintiff Saulsberry from the Cost Center Manager position and, once again, intentionally underrated Plaintiff Saulsberry's performance on Plaintiff Saulsberry's performance appraisal by assigning him a rating of "Excellent."  The rating was again overturned by the PRGC.  Plaintiff Saulsberry has included his removal from the position of Cost Center Manager in the instant Complaint.

36.     Plaintiff Saulsberry then filed informal complaint of discrimination with the Defendant, and the Parties entered into a settlement agreement, on April 2, 2021.

37.     A mediation was held, and, as a consequence of the mediation, a settlement agreement was entered into between Plaintiff Saulsberry and Defendant, whereby Plaintiff Saulsberry was assigned the position of Chaplain (religious services examiner/evaluation specialist)—excepted service.  The reassignment was to be completed by April 25, 2021.  This was the only excepted service position in the Program Review Division.

38.     Nonetheless, on April 2, 2021, during the mediation, Cherryl Litsey, Administrator, Community Reentry Affairs, declared that Plaintiff Saulsberry could no longer be associated with the Chaplaincy, although he was in Chaplain-Excepted service.

39.     On April 12, 2021, ten days after the EEO mediation, Plaintiff Saulsberry received his 2020-2021 Final Performance Appraisal, which was deliberately underrated.  The appraisal reflected Kugler's failure to acknowledge and capture accurately Plaintiff Saulsberry's actual performance.  Despite Plaintiff Saulsberry's having submitted 35 pages of documentation validating Plaintiff Saulsberry's work performance, Kugler ignored the accomplishments and underrated Plaintiff Saulsberry's performance.  The rating was vindictive, calculated, and representative of discriminatory and retaliatory animus against Plaintiff Saulsberry.

40.     Plaintiff Saulsberry thereupon filed a grievance with the PRGC, and the PRGC overturned Kugler's rating of Plaintiff Saulsberry for a fourth time.  Once again, Plaintiff Saulsberry received a rating of "Outstanding."

41.     On approximately April 13, 2021, Plaintiff Saulsberry was informed by William Lee, Core Section Chief, Program Review Branch, that McLearen and Kugler had directed Barry Ormond, Assistant Human Resource Manager, to engage in a prohibited personnel practice and

thereby violate a federal statute.  That is, Defendant violated 5 CFR 6.5, Assignment of Excepted

Employees, by reassigning him from excepted service to competitive service; and, in so acting,

Defendant necessarily engaged in a prohibited employment practice and accordingly violated 5

USC §§ 2302(b)(1) –(b)(14).

42.    On June 11, 2021, Defendant breached the settlement entered between Defendant

and Plaintiff Saulsberry by reassigning Plaintiff Saulsberry to a competitive service position

instead of an excepted service position.  Thus, on April 25, 2021, Plaintiff Saulsberry was

reassigned to the positions of Contract Facility Monitor ("CFM"), CFM Food Service Examiner,

and Food Service Examiner (collectively, the "Food Services position"), all competitive

positions, which were in Defendant's Program Review Division.  Plaintiff Saulsberry was

concurrently stripped of all of his duties and responsibilities as a Chaplain in Defendant's

excepted service.

43.    Kugler and McLearen simultaneously abolished the Chaplaincy Program Manager

position, a crucial Chaplaincy position, in order to ensure that Plaintiff Saulsberry would never

return to Chaplaincy Services as part of any settlement agreement.

44.    Louis Milusnic, Assistant Director, Program Review Division and BOP EEO

Director, had previously signed an SF-52 Request for Personnel Action for Plaintiff Saulsberry's

reassignment to the position of Religious Services Examiner, which was an excepted service

position, and which was pursuant to the settlement agreement between Plaintiff Saulsberry and

Defendant.

45.    Prior to Plaintiff Saulsberry's reassignment to the Food Service Examiner

position.  Plaintiff Saulsberry had no experience in food services, no credentials, and no

qualifications as specified by the Consolidated Staffing Unit ("CSU").  In addition, Plaintiff

Saulsberry was reassigned without a position description, without an SF-50, and without any information with respect to the change from an excepted service to a competitive service position. Even though Plaintiff Saulsberry has made numerous requests, he has not, to date, received a position description.

46.     In addition, neither the Department of Justice nor the BOP has an interchange agreement with the Office of Personnel Management ("OPM"), pursuant to 5 CFR 607 Sections 2302(b)(1)-2302(b)(14), that would allow an employee to be moved from an excepted service position to a competitive service position. Kugler and McLearen, who spearheaded the effort to reassign Plaintiff Saulsberry to a competitive service position, were therefore acting contrary to 5 CFR 605 and 5 USC §§ 2302(b)(1) –(b)(14).

47.     No other Chaplain, serving in the Program Review Division—to which Plaintiff Saulsberry was reassigned, pursuant to the settlement agreement—has been removed from his position or forced to serve in a Food Services position. The other two Chaplains in Defendant's Program Review Division were Jeff Locus and Michael Neal. Locus retired in December 2002, and Defendant hired a new Religious Services Examiner, Brent England, in April 202, after Defendant again refused to move .

48.     The vacant Evaluation Specialist-Religious Services position should have been assigned to Plaintiff Saulsberry as part the settlement agreement. Instead, in April 2021, the Religious Services Examiner positions were filled by Defendant with Jeff Locus and Christopher Houston. Houston was then selected for another position, and Neal was hired in January 2022. After Locus retired in December 2022, Defendant refused to move Plaintiff Saulsberry into the vacant position and instead assigned England, USP Atwater, to the position in April 2023. Again,

Defendant should have assigned Plaintiff Saulsberry to the Religious Service Examiner positions as part of the settlement agreement, and Defendant failed to do so.

49.     In September 2021, Plaintiff Saulsberry applied for a GS-14 Faith-Based Coordinator position in the Chaplaincy Services Branch. Plaintiff Saulsberry was the only applicant for the position who has served as a GS-14 Chaplaincy Program Manager. Plaintiff Saulsberry was nonetheless not selected for the position.

50.     Richard Toscano, Director, Equal Employment Opportunity Staff, Justice Management Division, issued a decision on May 11, 2022, stating that Defendant breached the settlement agreement by reassigning Plaintiff Saulsberry to the Food Service position, which, again, is a competitive service position. Toscano wrote: "We find that this unilateral reassignment, which became effective only approximately ten months after you were initially reassigned into an Evaluation Specialist/Examiner position in the Program Review Division, constitutes a breach of paragraph one of the agreement. In consideration of the foregoing, and in accordance with 29 C.F.R. Section 1615.504, it is the decision of the Department that the Bureau is not in compliance with the terms of paragraph one of the Agreement."

51.     Ormond testified that he had notified management that it was acting contrary to the settlement agreement: "I notified my upper management that there were problems with the Complainant's EEO settlement. That the settlement did not reflect the actions the division wanted me to process, ie. Moving the Complainant to a position in Program Review where he would not have any associations with the Chaplaincy Program. I advised that this was not part of the settlement agreement, and our division (HRMD) could later be caught in the middle of an EEO battle based on the information not in the EEO settlement. I was directed to move the

Complainant from his Excepted Service position as a Chaplain to a Competitive Service position as an evaluator."

52.    Ormond further testified that "[i]It is my professional belief that Alix McLearen, who was the Senior deputy Assistant Director related to the EEO settlement may have been given some bad information by someone in HRMD with regards to the Complainant and working as a Chaplain.  She referenced in one of her emails at the time that she had spoken to someone in HR with regard to what she was doing."

53.    Ormond explained Defendant's breach of the settlement agreement as follows: "Upper management later directed me to move him to an Excepted Service position where he could retain his job series as a Chaplain, which I did.  Later the Complainant contacted me complaining that he was being told he could not work in the position listed in his SF-50, but was being assigned  work in a position that he did not have the subject matter expertise or experience in.  I related this information up to my chain of command."

54.    Defendant made no effort to correct its breach of the settlement agreement entered into between Plaintiff Saulsberry and the Defendant.  Milusnic told Carolyn Sapla, of Defendant's EEO Office, that Defendant's prohibited practice—in breaching the settlement agreement and reassigning Plaintiff Saulsberry to a Food Service position—could be adjudicated by a judge or court.

55.    On May 17, 2022, Plaintiff Saulsberry again filed an EEO Complaint based upon reprisal for having engaged in protected activity on April 16, 2021.  The reassignment to the position of Food Service Examiner, competitive service is one of the grounds of Plaintiff Saulsberry's EEO Complaint.

56.     In November 2021, a vacant Religious Services Examiner (excepted service position) became available in the Program Review Division.  Defendant refused to reassign Plaintiff Saulsberry to the vacant position and continued the violation of 5 CFR 6.5 by forcing Plaintiff Saulsberry to remain in the Food Service Examiner (competitive service) position.

57.     On approximately January 31, 2022, Plaintiff Saulsberry became aware that management assigned Michael Neal, Supervisory Chaplain, MCC New York, to the position of Evaluation Specialist-Religious Services.  The vacant Evaluation Specialist-Religious Services position should have been assigned to Plaintiff Saulsberry as part the settlement agreement. Instead, in April 2021, the Religious Services Examiner positions were filled by Defendant with Jeff Locus and Christopher Houston.  Houston was then selected for another position, and Neal was hired in January 2022.  After Locus retired in December 2022, Defendant refused to move Plaintiff Saulsberry into the vacant position and instead assigned England, USP Atwater, to the position in April 2023.  Again, Defendant should have assigned Plaintiff Saulsberry to the Religious Service Examiner positions as part of the settlement agreement, and Defendant failed to do so.

58.     On February 15, 2022, Plaintiff Saulsberry emailed Milusnic a memorandum requesting corrective personnel action regarding the settlement agreement. The memorandum was ignored, and Plaintiff Saulsberry has yet to receive a formal response.  Instead, on September 14, 2023, Milusnic summoned Plaintiff Saulsberry to his office for a meeting for the first time.  Milusnic thereupon stated:  "I was told you could not be associated with the chaplaincy, so I kept you in Food Service."  Milusnic did not reveal to Plaintiff Saulsberry who provided him with this information.  With respect Defendant's breach of settlement agreement decision, Milusnic declared:  "No one complies with decisions from DOJ."

59.     On March 29, 2022, Defendant's management demanded that Plaintiff Saulsberry participate in his first Food Service Program Review Audit as a Food Service Examiner with the receipt of no position description and without the expertise or knowledge in evaluating food service department/program.  Clearly, Defendant was setting up Plaintiff Saulsberry to fail.

60.     Plaintiff filed a new Complaint, with additional claims, on May 18, 2022, and Defendant issued a FAD on October 24, 2022.  In said FAD, Defendant declined to investigate the issues that Plaintiff raised in his original Complaint, prior to the breach of the settlement agreement.  In said letter, dated October 24, 2022, Defendant advised Plaintiff that he could request a FAD.

61.     Although Plaintiff Saulsberry requested the FAD multiple times, the Agency has failed to issue a FAD.

## Count I

**(Title VII of the Civil Rights Act of 1964 – Race Discrimination/Harassment/Hostile Work Environment)**

62.     **Pl**aintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

63.     Defendant's conduct as described in this Complaint constitutes discrimination on the bases of race in violation of Title VII of the Civil Rights Act of 1964, as amended, and its implementing regulations.

64.     Defendant violated the law when it subjected Plaintiff Saulsberry to harassment and discrimination with regard to work assignments, performance ratings, verbal abuse, being

stripped of his duties, being told that he could not leave the workplace without his supervisor's permission, and non-selection, for positions for which he was qualified, based on his race.

65.     Defendant treated Caucasian employees, and other employees who were not African-American, more favorably than Plaintiff Saulsberry.  Among others, England, who is Caucasian, was selected for Religious Services Examiner positions for which Plaintiff Saulsberry was more qualified.  Those African-American employees, who were selected, had not engaged in prior protected activity, such as having filed EEO Complaints.  Nor were they whistle blowers.

66.     Plaintiff Saulsberry was also passed over for the position of Chaplain (FaithBased Coordinator) in the Chaplaincy Services Branch, Reentry Services Division, even though Plaintiff Saulsberry was the only applicant for the position who has served as a GS-14 Chaplaincy Program Manager.

67.     In sum, Plaintiff Saulsberry was exposed to disadvantageous terms or conditions of employment to which Caucasian employees and other non-African-American employees were not exposed.

68.     As a result of the intolerable working conditions and Defendant's actions, Plaintiff Saulsberry has suffered economic and noneconomic damages in the past and continuing through the present.  His damages as a result of Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and noneconomic damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs

incurred in connection with this action, and such other and further relief this Honorable Court

determines just and equitable, including all available statutory and equitable relief.

## Count II

**(Title VII of the Civil Rights Act of 1964 – Color Discrimination/Harassment/Hostile
Work Environment)**

69.     Plaintiff adopts and incorporates by reference all allegations of this Complaint as

if fully set forth herein.

70.     Defendant's conduct as described in this Complaint constitutes discrimination on

the bases of color in violation of Title VII of the Civil Rights Act of 1964, as amended, and its

implementing regulations.

71.     Defendant violated the law when it subjected Plaintiff Saulsberry to harassment

and discrimination with regard to work assignments, performance ratings, verbal abuse, being

stripped of his duties, being told that he could not leave the workplace without his supervisor's

permission, and non-selection for positions for which he was qualified.

72.     Defendant treated Caucasian employees and other employees who were not

African-American, and not of Plaintiff Saulsberry's color, more favorably than Plaintiff

Saulsberry. Among others, England was selected for Religious Services Examiner positions for

which Plaintiff Saulsberry was more qualified.

73.     Plaintiff Saulsberry was also passed over for the position of Chaplain (FaithBased

Coordinator) in the Chaplaincy Services Branch, Reentry Services Division, even though

Plaintiff Saulsberry was the only applicant for the position who has served as a GS-14

Chaplaincy Program Manager.

74.     In sum, Plaintiff Saulsberry was exposed to disadvantageous terms or conditions of employment to which Caucasian employees, and other employees who were not AfricanAmerican, and not of Plaintiff Saulsberry's color, were not exposed.

75.     As a result of the intolerable working conditions and Defendant's actions, Plaintiff Saulsberry has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and noneconomic damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action, and such other and further relief this Honorable Court, including all available statutory and equitable relief.

## Count III

### (Title VII of the Civil Rights Act of 1964 – Gender Discrimination/Harassment/Hostile Work Environment)

76.     Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

77.     Defendant's conduct as described in this Complaint constitutes discrimination on the bases of gender in violation of Title VII of the Civil Rights Act of 1964, as amended, and its implementing regulations.

78.     Defendant violated the law when it subjected Plaintiff Saulsberry to harassment and discrimination with regard to work assignments, performance ratings, verbal abuse, being

stripped of his duties, being told that he could not leave the workplace without his supervisor's permission, and non-selection for positions for which he was qualified..

79.     Defendant treated female employees more favorably than Plaintiff Saulsberry, and privileged females such as Kugler.  Female managers, such as McLearen, and other Caucasian females, such as Butterfield and Cimino, were particularly incensed that Plaintiff Saulsberry would dare to challenge Kugler, a Caucasian female.

80.     In sum, Plaintiff Saulsberry was exposed to disadvantageous terms or conditions of employment to which female employees were not exposed.

81.     As a result of the intolerable working conditions and Defendant's actions, Plaintiff Saulsberry has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and noneconomic damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action, and such other and further relief this Honorable Court,, including all available statutory and equitable relief.

## Count IV

## (Title VII of the Civil Rights Act of 1964 – Religion Discrimination/Harassment/Hostile Work Environment)

82.     Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

83.     Defendant's conduct as described in this Complaint constitutes discrimination on the bases of religion in violation of Title VII of the Civil Rights Act of 1964, as amended, and its implementing regulations.

84.     Defendant violated the law when it subjected Plaintiff Saulsberry to harassment and discrimination with regard to work assignments, performance ratings, verbal abuse, being stripped of his duties, being told that he could not leave the workplace without his supervisor's permission, and non-selection for positions for which he was qualified.

85.     Defendant treated employees who did not have Plaintiff Saulsberry's establishment of religion affiliation more favorably than Plaintiff Saulsberry.  Among others, Among others, Christopher Houston was selected for the Chaplain (Faith-Based Coordinator) position in the Chaplaincy Services Branch, Reentry Services Division, for which Plaintiff Saulsberry was more qualified.  Plaintiff Saulsberry was also more qualified than either Neal or England.

86.     Plaintiff Saulsberry was also thereby unfairly and discriminatorily passed over for the position of Chaplain (Faith-Based Coordinator) in the C position of Chaplain (Faith-Based Coordinator) in the Chaplaincy Services Branch, Reentry Services Division haplaincy Services Branch, Reentry Services Division, even though Plaintiff Saulsberry was the only applicant for the position who has served as a GS-14 Chaplaincy Program Manager.  Instead, Houston was selected for Religious Services Examiner position– for which Plaintiff Saulsberry was clearly more qualified.

87.     Plaintiff Saulsberry was also passed over for the position of Chaplain (FaithBased Coordinator) in the Chaplaincy Services Branch, Reentry Services Division, even though

Plaintiff Saulsberry was the only applicant for the position who has served as a GS-14

Chaplaincy Program Manager.

88.    In sum, Plaintiff Saulsberry was exposed to disadvantageous terms or conditions

of employment to which employees who did not have Plaintiff Saulsberry's religious affiliation

were not exposed.

89.    As a result of the intolerable working conditions and Defendant's actions, Plaintiff

Saulsberry has suffered economic and noneconomic damages in the past and continuing through

the present. His damages as a result of Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and

noneconomic damages, including ongoing damages, in an amount to be determined at trial, but

no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including

reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs

incurred in connection with this action, and such other and further relief this Honorable Court

determines just and equitable, including all available statutory and equitable relief.

## Count V

### (Title VII of the Civil Rights Act of 1964 – Retaliation Discrimination/Harassment/Hostile Work Environment)

90.    Plaintiff adopts and incorporates by reference all allegations of this Complaint as

if fully set forth herein.

91.    Defendant's conduct as described in this Complaint constitutes discrimination on

the bases of retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, and

its implementing regulations.

92.     Defendant violated the law when it subjected Plaintiff Saulsberry to harassment and discrimination with regard to work assignments, performance ratings, verbal abuse, being stripped of his duties, being told that he could not leave the workplace without his supervisor's permission, and non-selection for positions for which he was qualified.

93.     Defendant treated employees who did not have any prior protected EEO activity more favorably than Plaintiff Saulsberry.  Among others, Christopher Houston was selected for the position of Chaplain (Faith-Based Coordinator) in the Chaplaincy Services Branch, Reentry Services Division for which Plaintiff Saulsberry was more qualified.

94.     Plaintiff Saulsberry was also passed over for the position of Chaplain (FaithBased Coordinator) in the Chaplaincy Services Branch, Reentry Services Division, even though Plaintiff Saulsberry was the only applicant for the position who has served as a GS-14 Chaplaincy Program Manager.

95.     In sum, Plaintiff Saulsberry was exposed to disadvantageous terms or conditions of employment to which employees who did not have any prior protected EEO activity were not exposed.

96.     As a result of the intolerable working conditions and Defendant's actions, Plaintiff Saulsberry has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and noneconomic damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs

incurred in connection with this action, and such other and further relief this Honorable Court determines just and equitable, including all available statutory and equitable relief.

## Count VI

### (Title VII of the Civil Rights Act of 1964 - Nonselection)

97.     Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

98.     Defendant's conduct as described in this Complaint constitutes discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, and its implementing regulations.

99.     Defendant violated the law when it failed to select Plaintiff Saulsberry for the position of Religious Services Examiner (excepted service position), which became available in the Program Review Division; as well as for the position of Chaplain (Faith-Based Coordinator) in the Chaplaincy Services Branch, Reentry Services Division.   Plaintiff Saulsberry was the only applicant for the position who has served as a GS-14 Chaplaincy Program Manager.  Defendant also failed to select Plaintiff Saulsberry for the position of Chaplain excepted service to the Associate Warden-No Pathway for Non-Veteran Excepted Service, Director's Office, Central Office.  Defendant refused to select and/or reassign Plaintiff Saulsberry with respect to these vacant positions because of his race, color, gender, religion and in retaliation for engaging in prior protected EEO activity.

100.     Defendant treated employees outside of Plaintiff Saulsberry's protected classes more favorably than Plaintiff Saulsberry. Among others, Christopher Houston was selected for

the position of Chaplain (Faith-Based Coordinator) in the Chaplaincy Services Branch, Reentry

Services Division, for which Plaintiff Saulsberry was more qualified.

101.    Plaintiff Saulsberry was also passed over for the position of Chaplain (FaithBased

Coordinator) in the Chaplaincy Services Branch, Reentry Services Division, even though

Plaintiff Saulsberry was the only applicant for the position who has served as a GS-14

Chaplaincy Program Manager.

102.    In sum, Plaintiff Saulsberry was exposed to disadvantageous terms or conditions

of employment to which employees outside of his protected classes were not exposed.

103.    As a result of the nonselections, Plaintiff Saulsberry has suffered economic and

noneconomic damages in the past and continuing through the present. His damages as a result of

Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and

noneconomic damages, including ongoing damages, in an amount to be determined at trial, but

no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including

reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs

incurred in connection with this action, and such other and further relief this Honorable Court

determines just and equitable, including all available statutory and equitable relief.

## Count VII

### (Breach of Settlement Agreement under Title VII)

104.    Plaintiff adopts and incorporates by reference all allegations of this Complaint as

if fully set forth herein.

105.    In addition to  the delegation of enforcement authority under 42 U.S.C. § 2000e-

16(b) to the EEOC is the grant of jurisdiction under  to federal district courts for "civil actions brought Funder the provisions of §§ 2000e-5(f) through (k), which provide for federal district court jurisdiction over private parties.

106.    A number of courts have according held that federal district courts have authority under Title VII to enforce pre-decision settlement agreements entered into federal agencies during the EEO process.

107.    In the instant case, Defendant admits to having breached the settlement agreement between Plaintiff Saulsberry by having reassigned Plaintiff Saulsberry to a Food Service position in competitive service, instead of the excepted service to which Defendant agreed to assign Plaintiff Saulsberry under the terms of the settlement agreement.

108.    Defendant refused to assign the vacant Evaluation Specialist-Religious Services position to Plaintiff Saulsberry as part the settlement agreement.  Instead, in April 2021, Defendant's Religious Services Examiner positions were filled by Locus and Houston.  Houston was then selected for another position, and Neal was hired in January 2022.  After Locus retired in December 2022, Defendant refused to move Plaintiff Saulsberry into the vacant position and instead England, USP Atwater, in April 2023.  Again, Defendant should have assigned the Religious Services Examiner positions as part of the settlement agreement, and Defendant failed to do so.

109.    As a consequence of Defendant's breach of the settlement agreement entered into between Defendant and Plaintiff Saulsberry, Plaintiff Saulsberry has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and noneconomic damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action, and such other and further relief this Honorable Court determines just and equitable, including all available statutory and equitable relief.

### Count VIII

### (Violation of 5 CFR 6.5)

110.     Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

111.     Plaintiff had served in an excepted service capacity since 2001.

112.     Plaintiff Saulsberry's initial appointment in 2001 was an excepted service position, in that he was hired as a Chaplain excepted service in 2001.

113.     Under 5 CFR 6.5, Defendant is prohibited from assigning an employee from an excepted service into a competitive service.

114.     By reassigning Plaintiff Saulsberry into a competitive service, Defendant violated 5 CFR 6.5.

115.     As a consequence of Defendant's violation of 5 CFR 605, Plaintiff Saulsberry has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and noneconomic damages, including ongoing damages, in an amount to be determined at trial, but

no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including

reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs

incurred in connection with this action, and such other and further relief this Honorable Court

determines just and equitable, including all available statutory and equitable relief.

## Count IX

### (Violation of USC §§ 2302(b)(1) –(b)(14))

116.    Plaintiff adopts and incorporates by reference all allegations of this Complaint as
if fully set forth herein.

117.    Plaintiff Saulsberry had served in an excepted service capacity since 2001.

118.    Plaintiff Saulsberry's initial appointment in 2001 was an excepted service
position, in that he was hired as a Chaplain excepted service in 2001.

119.    Under 5 CFR 6.5, Defendant is prohibited from assigning an employee from an
excepted service into a competitive service.

120.    By reassigning Plaintiff Saulsberry into a competitive service, Defendant violated
5 CFR 6.5.

121.    By violating 5 CFR 6.5, Defendant necessarily violated USC §§ 2302(b)(1) –
(b)(14).

122.    As a consequence of Defendant's violation of 5 USC §§ 2302(b)(1) –(b)(14),
Plaintiff Saulsberry has suffered economic and noneconomic damages in the past and continuing
through the present. His damages as a result of Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and

noneconomic damages, including ongoing damages, in an amount to be determined at trial, but

no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action, and such other and further relief this Honorable Court determines just and equitable, including all available statutory and equitable relief.

## Count X

### (Violation of The Whistleblower Protection Act of 1969, 5 U.S.C. 2302)

123.    Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

124.    In 2019, Plaintiff Saulsberry reported Kugler's illegal activity in awarding a $10,000 contract to a former colleague—without authorization from, or a contact established with, the Procurement Branch—to the OSC.

125.    Kugler retaliated by stripping Plaintiff Saulsberry of all of his Chaplaincy duties, and exiling him from the Chaplaincy.  Kugler additionally underrated Plaintiff Saulsberry's performance apprasials.

126.    Kugler further retaliated by reassigning Complainant to the Food Service program, in violation of the settlement agreement entered into between Defendant and Plaintiff Saulsberry.

127.    McLearen, who was incensed that Plaintiff Saulsberry dared to blow the whistle on a Caucasian female, participated in this reassignment to the Food Service program, in violation of the settlement agreement entered into between Defendant and Plaintiff Saulsberry.

128.    By moving Plaintiff Saulsberry into the Food Service—in order to retaliate against Plaintiff Saulsberry for his protected whistleblowing—Defendant has also violated 5 CFR 6.5, and 5 USC §§ 2302(b)(1) –(b)(14).

129.    Not only did Litsey declare, to Plaintiff Saulsberry in 2021, that Plaintiff Saulsberry could no longer be associated with the Chaplaincy.  Milusnic also stated:  "I was told you could not be associated with the chaplaincy, so I kept you in Food Service."

130.    Defendant's decision to deprive Plaintiff Saulsberry of any duties pertaining to, or even an  relationship with, Chaplaincy Services, was an act of reprisal against Plaintiff Saulsberry for his whistle blowing activity.

131.    As a consequence of this violation of the Whistleblower Protection Act of 1989, Plaintiff Saulsberry has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and noneconomic damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action, and such other and further relief this Honorable Court determines just and equitable, including all available statutory and equitable relief.

## JURY DEMAND

Plaintiff respectfully requests a jury trial in all claims so triable.

Respectfully submitted,


 /s/  **JAMES FUCHS**

Dr. James Fuchs, Esq. (Bar No. 17092)
jfuchs@sniderlaw.com
        Snider & Associates, LLC
Pikesville Plaza Building
600 Reisterstown Road, 7th Floor
Baltimore, Maryland 21208
Phone: 410-653-9060
 Fax:  410-653-9061

## CERTIFICATION OF SERVICE

I certify that the aforesaid document was served by ECF on November 20, 2023.


 /s/  **JAMES FUCHS**

Dr. James Fuchs, Esq. (Bar No. 17092)
jfuchs@sniderlaw.com
Snider & Associates, LLC
Pikesville Plaza Building
600 Reisterstown Road, 7th Floor
Baltimore, Maryland 21208
Phone: 410-653-9060
 Fax:  410-653-9061